***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence. The Full Commission adopts the Opinion and Award of Deputy Commissioner Holmes with minor modifications.
 ***********
At the hearing before the Full Commission, plaintiff requested that she be allowed to enter additional evidence. Defendants were given ten days to file any objections to the additional evidence. Based upon plaintiff's request to admit additional evidence and defendants' response, the Full Commission admits the following into evidence:
 1. Wilkes Regional Medical Center outpatient referral form. *Page 2 
 2. Plaintiff's check stub dated July 3, 2006.
 3. A Form 22 submitted by defendants attached to their appellee brief to the Full Commission.
 4. January 19, 2005 report of an MRI to plaintiff's lumbar spine without contrast.
 5. A Workers' Compensation Retainer Agreement between plaintiff and her former attorney Franklin Smith.
 6. Estimate photographs numbers three through five of damage to van.
 7. An undated letter to Industrial Commission Dockets Director, Linda Langdon.
 8. Medical records from Boomer Medical Center.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by parties as:
 STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers' Compensation Act.
2. The employer/employee relationship existed between plaintiff and defendant.
3. Plaintiff's average weekly wage is $240.17 based upon a Form 22 completed by defendant.
4. Plaintiff's proposed issues for determination:
 What if any, indemnity and medical benefits is the plaintiff entitled to?
5. Defendants' proposed issues for determination:
 (a) Whether plaintiff suffered an injury by accident on June 30, 2006? *Page 3 
 (b) Whether plaintiff's current problems are the result of her pre-existing conditions?
 ***********
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff began working for defendant on or around November 12, 2005.
2. Plaintiff was employed as a driver by Wilkes Transportation Authority on June 30, 2006.
3. On or about June 30, 2006, while plaintiff was sitting in a parked WTA van, the bumper of the van was struck by a pickup truck, which was backing out of a parking space. Plaintiff was using her seat belt at the time of the minor impact. Photographs of the damage to the van showed only a small dent on the rear of the vehicle.
4. Plaintiff reported the accident to defendant on June 30, 2006 but reported that she was not injured and that the accident was not significant.
5. On June 30, 2006, plaintiff saw Chiropractor James Nieland in a previously scheduled appointment, and reported the work accident and pain in her back and neck.
6. Prior to her work-related accident of June 30, 2006, plaintiff had been seeking medical attention for pre-existing medical conditions, including fibromyalgia and migraines and had been seeing chiropractors for approximately six years.
7. In 2003, plaintiff had also been involved in a motor vehicle accident in which she sustained whiplash.
8. In 2005 and early 2006, plaintiff sought treatment for generalized myalgias, fibromyalgia, depression, sleep disturbance, weight gain, and obesity. *Page 4 
9. On June 5 and June 12, 2006, weeks before plaintiff's work accident, she was seen for fibromyalgia, migraines, electric shock like pain near her eye, depression, memory lapses or loss, obesity, and fatigue.
10. On July 3, 2006, plaintiff underwent x-rays of her spine by Dr. Nieland. The x-rays were normal and did not indicate an acute injury.
11. Plaintiff continued to treat with Dr. Nieland until November 2006.
12. On July 7, 2006, plaintiff was seen by Dr. Bob Wodecki regarding her sleep disturbance, pain and numbness in both hands, headaches, stiffness and sharp pains all over her body, low back pain, weight gain, fatigue and weakness, irregular heartbeat, chronic GERD, and swelling in her knees, arms, and ankles. Plaintiff made no mention of a work accident as being the cause of any of her problems.
13. Plaintiff underwent a bone scan which was abnormal and a sleep study which indicated that plaintiff does not have sleep apnea.
14. On August 3, 2006, plaintiff underwent a whole body scan which indicated polyarthralgia. Plaintiff also saw Dr. Watson on the same date and reported whole body pain, low back pain, knee and leg pain, feet pain and swelling, migraines, hand numbness, muscle spasms, forgetfulness, and weight gain of over 100 pounds during this year.
15. On August 17, 2006, plaintiff returned to Dr. Wodecki who noted that plaintiff's blood work, liver function, rheumatoid test, ck, sedentary rate, ANA, thyroid scan, and nerve conduction studies were normal. There was no evidence of sleep apnea, but plaintiff's bone scan was abnormal. X-rays indicated minimal cystic changes to plaintiff's left wrist, very minimal *Page 5 
questionable osteopenia to plaintiff's right wrist, normal ankles, and bony overgrowths of the first MTP joint to both feet.
16. On August 24, 2006, Dr. James Mazur reported to Dr. Wodecki that he opined that plaintiff's bone scan indicated arthritis and that she should follow up for complete neurological work-up with Dr. Watson, get physical therapy ultrasound treatments, stay off her feet as much as possible, get orthotics, and follow up in six weeks.
17. On August 30, 2006, plaintiff returned to Dr. Duncan McCall, who diagnosed plaintiff with fibromyalgia in 1998, to have Dr. McCall sign forms to assist in plaintiff's food stamps and other assistance. There is no evidence that plaintiff returned to Dr. McCall thereafter.
18. On October 5, 2006, plaintiff was seen at Wilkes Regional Medical Center for an EKG due to heart palpitations.
19. Plaintiff returned to Blue Ridge Cardiology and Internal Medicine on November 6, 2006 for her continued complaints. Medications were prescribed and an echocardiogram was ordered.
20. On November 9, 2006, plaintiff underwent a CT scan of her cervical and lumbar spine, at Wilkes Regional Medical Center, which indicated degenerative disc disease at C5-6 with disc osteophyte complex and a small central disc protrusion at L4-5.
21. Plaintiff returned to Blue Ridge Cardiology and Internal Medicine on November 15, 2006. It was noted that plaintiff had low back pain due to degenerative disc disease.
 22. On November 16, 2006, plaintiff had a normal echocardiogram. *Page 6 
23. On November 20, 2006, plaintiff underwent a cervical and lumbar MRI which indicated mild degenerative disc and joint disease of the lumbar spine with a broad-based slightly left paracentral protrusion at L4-5.
24. Plaintiff returned to Blue Ridge cardiology and Internal Medicine on November 30, 2006 and was assessed with chronic low back pain with an MRI showing mild degenerative disc and joint disease with a left paracentral protrusion at L4-5, fibromyalgia, stable GERD on Nexium, and a history of polyarthralgia. Plaintiff was referred to a spine surgeon and pain clinic.
25. On December 6, 2006, Dr. Haritha Boppana of Blue Ridge Cardiology and Internal Medicine sent a letter to plaintiff's former attorney, Franklin Smith, stating that as there were no previous MRI spine reports for comparison, he could not comment on whether plaintiff's work accident contributed to her radiological findings.
26. On January 26, 2007, plaintiff was seen at West Park Chiropractic for treatment of her fibromyalgia and muscle pain.
27. On January 29, 2007, plaintiff was seen by Dr. Mark Williamson for evaluation of musculoskeletal complaints. Plaintiff reported that her symptoms began with the June 30, 2006 work accident. Dr. Williamson's impression was chronic lumbago with fibromyalgia and arthritis. He noted that plaintiff's condition was non-surgical and encouraged her to continue with conservative treatment.
28. Plaintiff returned to Blue Ridge Cardiology and Internal Medicine on January 31, 2007 and complained of low back pain, weight gain, and generalized myalgias. Plaintiff was assessed with degenerative disc disease with disc protrusion (non-surgical) and was prescribed medications and referred to a dietician. *Page 7 
29. Plaintiff returned to Blue Ridge Cardiology and Internal Medicine on March 1, 2007 and reported that she was asymptomatic and requested a work release.
30. On March 14, 2007, plaintiff returned to Blue Ridge Cardiology and Internal Medicine and reported continued low back pain and that she was waiting to find another job because working in the cold temperatures and on concrete exacerbated her fibromyalgia.
31. On March 20, 2007, plaintiff reported to Wilkes Regional Medical Center Emergency Room and reported that she had fallen and injured her right shoulder and left knee. X-rays of plaintiff's shoulder were normal. Plaintiff was diagnosed with shoulder, upper arm, and knee sprain.
32. On March 23, 2007, plaintiff was seen at Blue Ridge Cardiology and Internal Medicine and reported left sided abdominal pain. A CT scan was ordered.
33. On March 26, 2007, plaintiff underwent an abdominal scan which was normal.
34. On March 29, 2007, plaintiff returned to Blue Ridge Cardiology and Internal Medicine complaining that her CT scan was not performed correctly in that plaintiff had the scan due to concerns of an obstruction and such was not mentioned on the report. Plaintiff reported diffuse pains, bilateral hand swelling, and weight gain. The assessment was Vitamin B12 deficiency, fibromyalgia, obesity, and no evidence of intestinal obstruction.
35. On April 3, 2007, plaintiff underwent a chest X-ray at Wilkes Regional Medical Center due to complaints of chest pain and pressure. The X-ray was normal and her symptoms were noted as GERD.
36. On April 5, 2007, plaintiff reported to Blue Ridge Cardiology and Internal Medicine and reported that her chest pain had spread. Cardiolite testing was scheduled. *Page 8 
37. On April 11, 2007, plaintiff was seen at Blue Ridge Cardiology and Internal Medicine and was diagnosed with depression related to her fibromyalgia and possible vaginitis.
38. Plaintiff underwent an EKG on April 30, 2007 which was normal.
39. On May 4, 2007, Dr. Glanzer of West Park Chiropractic noted that plaintiff had great difficulty holding a job since her work accident and noted that she had fibromyalgia and degenerative changes to her lumbar spine.
40. On May 10, 2007, plaintiff reported to Blue Ridge Cardiology and Internal Medicine that she had been discharged from the Rheumatology Clinic at Wake Forest University Medical Center as they had nothing to offer her. She reported continued pain, chest pain, weight gain, fibromyalgia, depression/anxiety, GERD, and Vitamin B12 deficiency.
41. Plaintiff began seeing Dr. Karolen C. Bowman in August 2007 for sinusitis, sharp shooting pains in her head and temples that felt like electric shocks, and abdominal and lumbar tenderness.
42. On September 3, 2007, Dr. Bowman prepared a letter indicating the nature of plaintiff's complaints and that plaintiff reported that her symptoms had worsened since the June 30, 2006 accident.
43. Plaintiff last worked for defendant-employer on or around July 6, 2006 when plaintiff was suspended and then terminated effective July 24, 2006 for her unprofessional behavior and noncompliance with company policies unrelated to plaintiff's workers' compensation claim.
44. Plaintiff's physicians wrote plaintiff out of work through July 10, 2006 related to her neck and/or low back pain; however, defendant was unaware that plaintiff was being taken *Page 9 
out of work due to her work accident and that plaintiff had been seeing Dr. Nieland for the past six months.
45. Plaintiff's physicians have not assigned plaintiff a disability rating as to her back or neck nor has she been continued out of work due to her back or neck conditions.
46. No medical evidence has been presented that plaintiff is unable to work full duty activities.
47. The testimony of Mr. Bruce Eilert is credible that plaintiff was suspended and later terminated for reasons unrelated to plaintiff's workers' compensation claim, but due to plaintiff driving the WTA work vehicle to outside businesses where plaintiff harassed females at such businesses and interrogated individuals as to whether they had an affair with plaintiff's husband before plaintiff was asked to leave the premises.
48. Plaintiff's medical records indicate that plaintiff's physical and medical condition were similar or the same before and after her work accident.
49. Plaintiff received chiropractic care for at least six years prior to her work accident and had whiplash due to a motor vehicle accident in 2003.
 ***********
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 CONCLUSIONS OF LAW
1. Plaintiff reported neck and low back pain pursuant to a minor accident arising out of or within the scope of her employment on June 30, 2006 pursuant to N.C. Gen. Stat. § 97-2.
2. Plaintiff has the burden of proof to show that her injuries are a result of a work-related accident. Henry v. A.C. Lawrence LeatherCo., 231 N.C. 477, 57 S.E.2d 760 (1950); *Page 10 Sims v. Charmes/Arby's Roast Beef, 142 N.C. App. 154, 542 S.E.2d 277
(2001). In the present case, plaintiff has not proffered sufficient medical evidence that she suffered an injury to her back or neck or that she suffered an aggravation or a worsening of a pre-existing condition as a result of her work-related accident. N.C. Gen. Stat. § 97-2.
3. Plaintiff's treating physicians' medical records relate plaintiff's disc protrusion to plaintiff's degenerative disc and joint disease. The gradual onset of back pain is not compensable within the meaning of the Workers' Compensation Act. See Richards v. Valdese, 92 N.C. App. 222,374 S.E.2d 116 (1988), cert. denied, 324 N.C. 337, 378 S.E.2d 799
(1989).
6. Plaintiff has failed to prove disability as a result of the any alleged work-related injury. N.C. Gen. Stat. § 97-2(9).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. For the reasons set forth herein above, plaintiff's claim is hereby DENIED.
2. Each side shall pay its own costs. Defendants shall pay an expert witness fee of $365.00 to Dr. Robert Wodecki.
This the 27th day of October 2008.
 S/_________________________
 BUCK LATTIMORE
 COMMISSIONER
CONCURRING:
 S/_________________________ CHRISTOPHER SCOTT COMMISSIONER
 S/_________________________ PAMELA T. YOUNG CHAIR
 *Page 1